UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| MARK SULLIVAN, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) | Civil No. 13-11504-LTS |
| RAYMOND MARCHILLI, | ) ) ) | |
| Respondent. | ) ) | |

MEMORANDUM AND ORDER ON
PETITION FOR WRIT OF HABEAS CORPUS

January 13, 2015

SOROKIN, J.

Mark Sullivan, an inmate at North Central Correctional Institution in Gardner, Massachusetts, has filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. No. 1.[1] Sullivan's petition levies a single challenge to his state-court conviction for possessing child pornography: that it violates his First Amendment right to free speech because the photograph forming the basis for the criminal charge depicted mere nudity. Although this case required the state trial and appellate courts to navigate difficult constitutional questions, the stringent standards governing federal habeas review compel the denial of Sullivan's petition.

I.  BACKGROUND

On January 30, 2009, a jury convicted Sullivan of possessing child pornography in

---

[1]Citations are to documents that are part of the docket and viewable via the Court's electronic filing system. Where page numbers are cited, references are to the numbering placed at the top of each page by the electronic filing system.

violation of Chapter 272, Section 29C of the Massachusetts General Laws.² Sullivan, 972 N.E.2d at 478. After a subsequent bench trial, he also was convicted of possessing child pornography as a subsequent offense, a separate charge under state law. Id. at 479. He was sentenced to ten-to-fifteen years' incarceration, to run concurrently with a related sentence for violating probation. Doc. No. 1 at 2.

The charges arose after a librarian discovered Sullivan using a computer in the Hingham Public Library to print a photograph of a naked girl on a beach. Sullivan, 972 N.E.2d at 479. The Massachusetts Appeals Court ("MAC") described the photograph, which came from a Russian-based photo-sharing website, as follows:

> The photograph in the instant case is of a naked adolescent girl sitting on her knees on a beach with her legs separated, but not spread, and her pubic area partially visible. The focal point of the photograph is her developing breasts and, to a lesser extent, her pubic area. Her developing left breast and nipple are prominently displayed. The tilt of her head, the shadow line it creates, the angle of her glasses and ponytail, and her right arm align with her right nipple, drawing the viewer's attention to it. Her left hand is pointed down and over, but not touching, her pubic area, placing half of her pubic area in shadow. Her hand position draws the viewer's attention to her pubic area. The girl is staring downward. She is not smiling, nor is she otherwise engaging with the photographer. Someone who knows the girl would be readily able to identify her from the photograph. She does not appear to be posed.

Id. at 483.

Sullivan's defense at trial was that the photograph was not child pornography (and, thus, possession of it was not illegal) because it did not constitute a "lewd exhibition" as required by

---

²A previous trial of the same charge had resulted in a hung jury. Commonwealth v. Sullivan, 972 N.E.2d 476, 479 n.1 (Mass. App. Ct. 2012).

the relevant statute.[3]  See Supplemental Answer, Tab B at 44-50, Jury Trial Tr. (Jan. 30, 2009).

Sullivan reiterated this theory on appeal as a challenge to the sufficiency of the evidence.[4]  As support, Sullivan relied on both state and federal decisions exploring similar statutory language and distinguishing between benign photographs of nude children (which are protected expression under the First Amendment) and child pornography (which is not so protected).  See Supplemental Answer at 53-62.  The MAC affirmed Sullivan's conviction after surveying relevant law regarding the boundaries between the First Amendment's protections and statutes permissibly criminalizing possession of child pornography, evaluating the photograph at issue, and concluding that the photograph "is a lewd exhibition of a child's breasts and pubic area and therefore an exploitation of her developing sexuality."  Sullivan, 972 N.E.2d at 482-88.  One justice dissented, arguing the photograph portrayed "mere nudity," and that criminalizing its possession was "constitutionally infirm."  Id. at 491-92.  He suggested the lack of clear appellate-court guidance on the meaning of the phrase "lewd exhibition" – or, as the dissenting justice put it, "on what demarcates the boundary between the exercise of free expression and a lengthy prison term" – "raises both First Amendment and due process concerns."  Id. at 496.

Sullivan sought further review by the Supreme Judicial Court ("SJC"), citing the MAC

---

[3]The criminal statute under which Sullivan was prosecuted and convicted makes it a crime to "knowingly . . . possess[] a . . . photograph . . . of any child whom the person knows or reasonably should know to be under the age of 18 years" if the photograph depicts one of seven specified categories of images.  See Mass. Gen. Laws ch. 272, § 29C.  In this case, the only specified category that could have encompassed the relevant photograph was the last one, which requires that the child be "depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed . . . pubic area . . . or, if such person is female, a fully or partially developed breast of the child."  Id. § 29C(vii).

[4]Sullivan's state-court appeal raised other issues as well, but they are not repeated in his federal petition so they need not be recounted here.

3

dissent and urging the SJC to announce a clear rule limiting "lewd exhibition" to depictions portraying children "in an overtly 'sexualized' manner that is tantamount to sexual abuse or exploitation of the child." Supplemental Answer at 357-58 (quoting Sullivan, 972 N.E.2d at 496). The SJC denied review in November 2012; Sullivan did not seek certiorari in the United States Supreme Court. Doc. No. 1 at 3-4.

In June 2013, acting through counsel, Sullivan filed a timely federal habeas petition raising only one claim:

> [The] [d]enial of [Sullivan's] motion for [a] required finding of not guilty on one count of possession of child pornography violated his First Amendment right to protected speech since the single photograph he downloaded from the internet was of a nude adolescent but it did not depict the requisite "lewd exhibition" to make the possession unlawful.

Id. at 6.

The respondent opposed Sullivan's petition, arguing the claim it presents was not properly exhausted in state court and would not justify habeas relief in any event. See generally Doc. No. 19. Sullivan filed a reply brief, Doc. No. 22, and the matter was reassigned to the undersigned thereafter, Doc. No. 25.

## II. LEGAL FRAMEWORK

A state prisoner is not entitled to habeas relief in federal court unless he has first exhausted his available remedies in state court. 28 U.S.C. § 2254(b); see O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Mele v. Fitchburg Dist. Court, 850 F.2d 817, 819 (1st Cir. 1988). A petitioner "shall not be deemed to have exhausted the remedies available . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." § 2254(c). To satisfy this exhaustion requirement, which is grounded in principles of comity, a

4

petitioner must complete the state's established appellate review process, thereby giving "the state courts one full opportunity to resolve any constitutional issues." O'Sullivan, 526 U.S. at 839; accord Mele, 850 F.2d at 819.

In Massachusetts, the exhaustion requirement obligates a petitioner to present his claims to the SJC before asking a federal habeas court to consider them. Mele, 850 F.2d at 820, 823. It is not enough for a petitioner to litigate his constitutional claims in a motion before the state trial court and a subsequent appeal to the MAC. Id. "[A]n appealed issue cannot be considered as having been fairly presented to the SJC for exhaustion purposes unless the applicant has raised it within the four corners of the [application for leave to obtain further appellate review, i.e., the] ALOFAR." Id. at 823; see Fusi v. O'Brien, 621 F.3d 1, 6 (1st Cir. 2010) (calling the ALOFAR the "decisive pleading" for exhaustion purposes); cf. Silvia v. Hall, 193 F. Supp. 2d 305, 311 (D. Mass. 2002) (finding issues were fairly presented to the SJC where they were discussed in the text of the fact and argument sections of the ALOFAR, although not identified separately among the "issues for further appellate review").

A petitioner who has satisfied the initial exhaustion hurdle still faces a difficult task upon arrival in federal court. Here, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") presents a "formidable barrier" limiting the availability of habeas relief where state courts have adjudicated the merits of a prisoner's claims. Burt v. Titlow, 134 S. Ct. 10, 16 (2013). The AEDPA does not permit a federal district court to grant a writ of habeas corpus unless it finds that the state court's adjudication of a petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In other words, state court decisions merit substantial deference.

As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 131 S. Ct. 770, 786 (2011); accord Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). If a state court's decision "was reasonable, it cannot be disturbed." Hardy v. Cross, 132 S. Ct. 490, 495 (2011) (per curiam); see Parker v. Matthews, 132 S. Ct. 2148, 2149 (2012) (per curiam) (emphasizing federal habeas courts may not "second-guess the reasonable decisions of state courts" (internal quotation and citation omitted)). When applying this strict standard, I must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003).

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The state court is not required to cite, or even have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf. Richter, 131 S. Ct. at 785 ("§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference).

6

For a habeas petitioner to prevail under this daunting standard, the state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court. Williams, 529 U.S. at 404-05; see Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). In a string of decisions summarily reversing grants of habeas relief by lower federal courts, the Supreme Court has "repeatedly emphasized" that "circuit precedent does not constitute 'clearly established Federal law'" for purposes of § 2254(d)(1). Glebe v. Frost, 135 S. Ct. 429, 431 (2014); see also, e.g., Lopez v. Smith, 135 S. Ct. 1, 4 (2014) (warning against using circuit precedent to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced" (internal quotation and citation omitted)); Matthews, 132 S. Ct. at 2155 (faulting the Sixth Circuit for "consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the [state court's] decision").

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles, 556 U.S. at 122. Once again, this assessment is limited to federal

7

law as articulated by the Supreme Court, and not the lower federal courts. See Smith, 135 S. Ct. at 4. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Matthews, 132 S. Ct. at 2155.

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002); see also Richter, 131 S. Ct. 786-87 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").

Regardless whether I might share the dissenting justice's views if I were considering Sullivan's claim de novo or on direct review, the stringent standards set forth above do not permit me to overturn the MAC's decision "simply because [I might] disagree[] with [it]." Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam).

III. DISCUSSION

    A. Exhaustion

The respondent first urges the Court not to reach the merits of Sullivan's claim, suggesting he failed to present it in his ALOFAR. Doc. No. 19 at 7-9. In the respondent's view, Sullivan exhausted a challenge to the sufficiency of evidence supporting his conviction – i.e., a claim that the evidence was insufficient to establish a violation of the relevant statute because the

8

photograph did not contain a "lewd exhibition" – rather than a First Amendment challenge to his conviction – i.e., a claim that the photograph was protected expression because it contained mere nudity, and not a "lewd exhibition." Id. Sullivan disagrees, asserting that he referenced the First Amendment in his ALOFAR when quoting from the MAC's dissent, cited both state and federal cases which treated the issue as one arising under the First Amendment, and attached to his petition the MAC's decision (which reflects that both the majority and dissent engaged in a First Amendment analysis when considering the sufficiency challenge). Doc. No. 22 at 1-6.

Although Sullivan certainly could have framed his state-court pleadings to more clearly highlight the federal constitutional nature of his sufficiency claim, the ALOFAR nonetheless "fairly and recognizably presented . . . the factual and legal bases" of the relevant First Amendment claim. Adelson v. DePaola, 131 F.3d 259, 262 (1st Cir. 1997). Sullivan relied heavily on, and quoted extensively from, the MAC's dissent, a copy of which was attached to his petition. That opinion plainly treated the issue as one implicating the First Amendment and, thus, provided notice to the SJC of the constitutional underpinnings of Sullivan's claim. See, e.g., Sullivan, 972 N.E.2d at 497 (quoting several Supreme Court decisions regarding constitutional challenges to criminal child pornography statutes). The MAC majority also conducted a First Amendment analysis, and its opinion was before the SJC as well. See id. at 483-84. Moreover, Sullivan analogized his case to United States v. Amirault, 173 F.3d 28, 33 (1st Cir. 1999), which examined whether a similar photograph contained a "lascivious exhibition of the genitals" for purposes of a federal statute related to sentencing. In Amirault, the First Circuit called its determination "a quintessential First Amendment ruling." Id.

Under these circumstances, Sullivan provided sufficient notice of the federal

constitutional nature of his claim within the four corners of his petition to the SJC to satisfy the AEDPA's exhaustion requirements. But even if the Court were to adopt the respondent's view and deem Sullivan's claim unexhausted, the AEDPA would permit consideration of the merits of Sullivan's claim in any event because, as set forth in the following section, it does not warrant habeas relief. 28 U.S.C. § 2254(b)(2).

B. Merits

According to Sullivan, resolution of his petition turns on one question: whether the photograph at issue depicted mere nudity, or whether it contained a "lewd exhibition" of the young girl's pubic area or breasts.[5] He urges the Court to view it as the former, to find it constitutes protected expression, to conclude that Sullivan's conviction violated the First Amendment, and to view the MAC's decision as an unreasonable application of Supreme Court precedent. This I cannot do.

To obtain habeas relief, Sullivan would have to demonstrate that the MAC unreasonably applied clearly established Supreme Court precedent when it rejected his claim. See § 2254(d). The problem Sullivan faces is that no decision of the Supreme Court embraces the specific rule he needs this Court to rely upon to overturn the MAC majority's determination. In its decisions relevant to this case, the Supreme Court has addressed in broad terms the line between protected expression and child pornography, and has announced a general rule permitting legislation

---

[5]Unlike the statutes at issue in many other cases cited by Sullivan, the Massachusetts child pornography statute explicitly extends beyond depictions of a child's pubic area to also include "lewd exhibitions" of young girls' "fully or partially developed breast[s]." Mass. Gen. Laws ch. 272, § 29C(vii). That feature of the Massachusetts law is relevant here, as the photograph at issue displays the subject's "partially developed breast[s]" more prominently than it does her pubic area.

10

criminalizing the distribution of materials "that visually depict sexual conduct by children below a specified age" so long as "sexual conduct" is "suitably limited and described." New York v. Ferber, 458 U.S. 747, 764 (1982) (upholding state statute outlawing distribution of child pornography); see also Osborne v. Ohio, 495 U.S. 103, 111 (1990) (upholding state statute outlawing possession of child pornography). In these decisions, the Supreme Court upheld as constitutional statutes criminalizing the creation, distribution, and possession of materials containing a "lewd exhibition of [a child's] genitals." Ferber, 458 U.S. at 751; see Osborne, 495 U.S. at 113-14. The Court did not define that phrase, but noted it was "not unknown in this area" and found it specified a sufficiently limited set of materials – beyond those portraying mere nudity – to satisfy the general constitutional rule distinguishing child pornography from protected expression. See Ferber, 458 U.S. at 765.

Sullivan acknowledges that no Supreme Court decision announces a definition for "lewd exhibition" (or "lewdness," or "lasciviousness," or any other equivalent term in this context). See Doc. No. 22 at 7; see also Sullivan, 972 N.E.2d at 495 (Milkey, J., dissenting) (lamenting the lack of appellate court guidance on this issue and noting the First Circuit, too, "flatly declined to address this question" in United States v. Frabizio, 459 F.3d 80, 85-86 & n.9 (1st Cir. 2006)). Echoing the MAC dissent, Sullivan urges adoption of a rule defining "lewd exhibition" as something "present[ing] the child in an overtly 'sexualized' manner that is tantamount to sexual abuse or exploitation of the child." Doc. No. 3 at 13 (quoting Sullivan, 972 N.E.2d at 496 (Milkey, J., dissenting)). No matter how sensible such a rule might be for the reasons forcefully articulated in the MAC dissent, the fact remains that the Supreme Court has not endorsed such a limited view of the term "lewd exhibition." Nor has it applied its more general rule to conclude

11

that a display such as the photograph at issue is protected by the First Amendment. Absent such precedent clearly establishing a more specific rule applicable here, this Court cannot fault the state court for the manner in which it sought to apply the broad principles articulated in Ferber and Osborne to the specific facts it confronted. See Matthews, 132 S. Ct. at 2155 (reversing the Sixth Circuit where its own "elaborate, multistep test" for assessing prosecutorial misconduct went beyond the "highly generalized standard" established by the Supreme Court); see also Frost, 135 S. Ct. at 431 (faulting the Ninth Circuit for using lower court decisions to "bridge the gap" between a general rule established in Supreme Court precedent and a habeas petitioner's more specific claim).

A substantial portion of Sullivan's brief attacks the MAC's decision as inconsistent with Amirault and argues the MAC majority improperly applied what have come to be known as the Dost factors.[6] See Doc. No. 3 at 8-12. Sullivan suggests this Court would be justified in looking to the Dost factors to "lend substance to the meaning of lewdness," Doc. No. 22 at 7-8 (quoting the MAC dissent), implicitly conceding that the Supreme Court's precedent alone does not adequately do so for AEDPA purposes. But neither Amirault nor Dost created "clearly established Federal law" for AEDPA purposes. See Smith, 135 S. Ct. at 2. Even if the MAC majority misapplied such decisions or reached a conclusion in direct conflict with them on identical facts, the limitations placed on federal review under the AEDPA do not permit habeas

---

[6]In United States v. Dost, 636 F. Supp. 828 (S.D. Cal. 1986), a federal court in California enumerated six factors it considered relevant when assessing whether a photograph contained a lewd or lascivious exhibition and, thus, constituted child pornography. Many federal and state courts, including those in Massachusetts, have turned to those factors in cases such as Sullivan's. See, e.g., Amirault, 173 F.3d at 32 ("We believe that the Dost factors are generally relevant and provide some guidance in evaluating whether the display in question is lascivious."); Commonwealth v. Bean, 761 N.E.2d 501, 506 (Mass. 2002) (referencing the Dost factors).

12

relief where the Supreme Court has not established or endorsed the specific rules applied by the lower courts. Id. "The highly generalized standard for evaluating" First Amendment claims in the child pornography context, as set forth in Ferber and Osborne, "bears scant resemblance to the elaborate, multi[factor] test employed" in Dost and Amirault. Parker, 132 S. Ct. at 2155. As such, decisions like Dost and Amirault do not "merely reflect what has been 'clearly established' by [Supreme Court] cases," and they cannot form the basis for a meritorious claim under the AEDPA.[7] Id.

Ultimately, the record here demonstrates that the MAC majority accurately described the photograph, which this Court views as falling somewhere between an unambiguous depiction of "mere nudity" and obvious child pornography. Even if reasonable minds could disagree about what conclusions to draw about whether certain lines in the photograph draw a viewer's eye to

---

[7]Sullivan relies heavily on Amirault, urging that "there is nothing to distinguish this case" from it. Doc. No. 3 at 11. That simply is not true. First, Amirault is legally distinct because it involved application of a statutory sentencing enhancement, which the First Circuit considered de novo on direct review. 173 F.3d at 33. The strict AEDPA standards applicable here did not limit the court's review in that case.

A second key difference involves the relevant statutory language. The federal statute at issue in Amirault defined "sexually explicit conduct" to include "lascivious exhibition of the genitals or pubic area" of the subject. Id. at 31 (quoting 18 U.S.C. § 2256(2)). The definition of materials triggering the sentencing enhancement did not also extend to such exhibition of an adolescent girl's developing breasts, as the relevant Massachusetts statute does. Although Amirault also involved a photo of a nude young female kneeling on a beach, the First Circuit's application of the Dost factors turned in large part on the fact that the subject's genitals and pubic area were not "featured in the center of the composition." Id. at 33 (also discussing the positioning of the subject's legs, but never mentioning or describing the subject's breasts). The broader reach of the Massachusetts statute renders the MAC's consideration of the prominence of the subject's breasts in Sullivan's case both appropriate and necessary.

Given the First Circuit's acknowledgment that "others may differ about some of the judgment calls [the court] made in [its] analysis of the photograph," id. at 35, it is not at all clear that the decision in Amirault would have been the same had the language of the Massachusetts statute controlled, or had the AEDPA's standard of review applied.

13

certain parts of the subject's young body, nothing about the MAC majority's characterization was unreasonable or even incorrect. The MAC majority identified and discussed the relevant Supreme Court decisions and reasonably looked for guidance to other lower federal court and state court decisions in this area. And the MAC majority engaged in serious consideration of the central question here, acknowledging that this was "not a simple case," Sullivan, 972 N.E.2d at 487, a fact which is further evidenced by the state court's split decision and the thoughtful and impassioned dissent. Under these circumstances, and for the reasons set forth above, it is not within this Court's power on habeas review "to second-guess the reasonable decision[] of [the] state court[]." Renico v. Lett, 559 U.S. 766, 779 (2010).

IV.    CONCLUSION

Resolution of Sullivan's petition does not require (or even permit) this Court to decide whether possession of a photograph like the one at issue should be criminalized under child pornography laws. That determination is within the province of the state legislature. Nor does this case require (or even permit) the Court to decide whether the relevant Massachusetts statute is unconstitutionally overbroad – either because it encompasses a photograph like the one at issue here, or because it does not define the term "lewd exhibition." That determination would be within the province of the state courts in the first instance (and Sullivan raised no such challenge in any of his state or federal filings).

The only question here is whether the MAC's decision that the photograph at issue was a "lewd exhibition of a child's breasts and pubic area" violated any clearly established federal law as determined by the United States Supreme Court. The Court is aware of no Supreme Court decision which "establish[es] clearly the specific rule [Sullivan] needs." Smith, 135 S. Ct. at 4.

14

Because reasonable minds could disagree whether the picture at issue is lewd, this Court cannot conclude that the photograph is so patently "mere nudity" that the MAC's decision was an unreasonable application of the general rule from Ferber and Osborne. Accordingly, Sullivan has not demonstrated he is entitled to relief under § 2254, and his habeas petition must be DENIED.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
U.S. District Judge